**Chere A. SHAWER, Appellant,**

v.

**INDIANA UNIVERSITY OF PENNSYL-VANIA, William W. Hassler, Bernard T. Gillis, Daniel N. Boone, and Robert Hermann.**

**No. 78–2493.**

United States Court of Appeals,
Third Circuit.

Argued July 13, 1979.

Decided Aug. 9, 1979.

---

Michael D. Buchwach (argued), Litman Litman Harris & Specter, P.A., Pittsburgh, Pa., for appellant.

John M. Duff, Deputy Atty. Gen. (argued), Dept. of Justice, Jack E. Solomon, Asst. Atty. Gen., Dept. of Ed., Pittsburgh, Pa., Patricia A. Donovan, Deputy Atty. Gen., Dept. of Ed., Harrisburg, Pa., for appellees.

1. The appellant's claims against the individual defendants are not relevant to this appeal.

2. Complaint ¶ 3(a) (reproduced in Appendix at 2a–3a); Motion to dismiss on behalf of Indiana University, Appendix at 10a.

3. The Eleventh Amendment provides:
   The Judicial power of the United States shall not be construed to extend to any suit

Before ADAMS, ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

On October 6, 1975, the appellant, Chere A. Shawer, brought this civil rights action against the Indiana University of Pennsylvania and four of its officials alleging that the University discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17.[1] The parties concede that Indiana University ". . . is a branch of the Department of Education of the Cómmonwealth of Pennsylvania [and that it is] financially supported by the Commonwealth of Pennsylvania."[2] She alleged that the University discriminated against her in filling teaching positions in its Department of Philosophy and in making appointments to administrative positions throughout the University. Generally she claims she was denied several positions which were granted to males who were equally or less qualified. Further, she alleges that she was discriminated against because she filed a complaint with the Equal Employment Opportunity Commission.

The University moved to dismiss her complaint on various grounds including the defenses of sovereign immunity and the Eleventh Amendment.[3] On September 20, 1978, the district court granted the motion holding that the University was "immune from suit as an integral part of the state government performing essential functions as a state (see *National League of Cities v. Usery*, 426 U.S. 833, 847, 851, [96 S.Ct. 2465, 49 L.Ed.2d 245] (1976)."[4] Appellant's mo-

in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

4. *Shawer v. Indiana University of Pennsylvania, et al.*, Civ. No. 75–1270, Order granting motion to dismiss, Docket Item 20 (W.D.Pa. Sept. 20, 1978), Appendix at 11a.

tion for reconsideration, which relied on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), was denied on October 3, 1978. This appeal followed. We reverse.

## I.

Prior to 1972, state and local governments had not been subject to the Equal Employment Opportunity Act. By 1972, however, Congress felt that:

> The clear intention of the Constitution, embodied in the Thirteenth and Fourteenth Amendments, is to prohibit all forms of discrimination.
>
> Legislation to implement this aspect of the Fourteenth Amendment is long overdue, and the committee believes that an appropriate remedy has been fashioned in the bill. Inclusion of state and local employees among those enjoying the protection of Title VII provides an alternate administrative remedy to the existing prohibition against discrimination perpetuated "under color of state law" as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.

H.R.Rep. No. 238, 92d Cong., 1st Sess. 19 (1971), *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 2137, 2154.

Despite the clear expression by Congress that its legislative authority was predicated on the Thirteenth and Fourteenth Amendments, the University claims that in the 1972 Amendments to Title VII Congress was attempting to "regulate state government under the commerce clause, U.S. Constitution Article 1, Section 8, Clause 3." Brief for Appellee at 1. The University concedes that Congress may pass legislation pursuant to Section 5 of the Fourteenth Amendment [5] to restrict state government but argues that Title VII springs from the Commerce Clause. Further, it argues that when the Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), overruled *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), and held un-

constitutional the extension of federal minimum wage and maximum hour provisions to state and municipal employees, it "destroyed the basis of all similar federal regulation of state government via the Commerce Clause." Brief for Appellees at 8.

■ If the University were to be graded for the ingenuity of its argument, it would certainly earn an A. When graded on the substantive merits of its argument, however, the University flunks. The issue is now foreclosed by the Supreme Court's statement in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 453 n.9 96 S.Ct. 2666, 2670 n.9, 49 L.Ed.2d 614 (1976), that "[t]here is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." Moreover, the legislative history of the Equal Employment Opportunity Act of 1972 demonstrates clearly that the inclusion of state and local government employees was effected pursuant to Section 5 of the Fourteenth Amendment. We have previously quoted the House Report. The Senate Report is equally emphatic with language prophetically tailored to the instant case:

> The Constitution is imperative in its prohibition of discrimination by State and local governments. The Fourteenth Amendment guarantees equal treatment of all citizens by States and their political subdivisions, and the Supreme Court has reinforced this directive by holding that State action which denies equal protection of the laws to any person, even if only indirectly, is in violation of the Fourteenth Amendment. It is clear that the guarantee of equal protection must also extend to such direct action as discriminatory employment practices.
>
> The Committee believes that it is an injustice to provide employees in the private sector with the assistance of an agency of the Federal Government in redressing their grievances while at the

---

5. Section 5 of the Fourteenth Amendment provides that "the Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

same time denying assistance similar to State and local government employees. The last sentence of the Fourteenth Amendment, enabling Congress to enforce the Amendment's guarantees by appropriate legislation is frequently overlooked, and the plain meaning of the Constitution allowed to lapse. The inclusion of State and local government employees within the jurisdiction of Title VII guarantees and protections will fulfill the Congressional duty to enact the "appropriate legislation" to insure that all citizens are treated equally in this country. (footnotes omitted).

S.Rep. No. 415, 92d Cong., 1st Sess. 10–11 (1971).

■ It is therefore clear beyond question that when Congress eliminated the exemption in Title VII for the employment practices of educational institutions and extended Title VII to state governments, it did so pursuant to Section 5 of the Fourteenth Amendment and thereby abrogated any existing immunity of the states from liability for discriminatory employment practices.

Because of the University's concession that the application of Title VII to state and local government employment would be proper under the Fourteenth Amendment, there is no need to address the issue raised by the University of whether all federal regulation of state government via the Commerce Clause is invalid after *National League of Cities v. Usery.*

## II.

The district court, however, analyzed the issue differently. Relying on *National League of Cities v. Usery*, the district court, in denying the motion for reconsideration, held:

Although it is true, as plaintiff ably points out that *Fitzpatrick v. Bitzer*, 427 U.S. 445, [96 S.Ct. 2666, 49 L.Ed.2d 614] (June 28, 1976) was decided after *National League of Cities v. Usery*, 426 U.S. 833, [96 S.Ct. 2465, 49 L.Ed.2d 245] (June 24, 1976), and that the 14th Amendment came into force after the 11th Amendment, nevertheless *Usery* did not involve

the Eleventh Amendment which is nowhere mentioned in the opinion of Mr. Justice Rehnquist or in the other opinions filed in the case, but upon a structural feature of constitutional federalism akin to the doctrine of separation of powers, which recognizes "that there are attributes of sovereignty attaching to every state government which may not be impaired by Congress, not because Congress may lack an affirmative grant of legislative authority to reach the matter, but because the constitution prohibits it from exercising the authority in that manner" (see 426 U.S. at 845, [96 S.Ct. 2465]); and the Court being of opinion that under present-day conditions education is an established and essential feature of State government, appertaining to the State as a State; and that accordingly *Bitzer*, a sequel to *Edelman v. Jordan*, 415 U.S. 651, [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974), involving interpretation of the Eleventh Amendment, did not detract from the doctrine established in *Usery.*

In *National League of Cities*, the Supreme Court invalidated the 1974 amendments to the Fair Labor Standards Act which had extended the federal minimum wage and maximum hour provisions to virtually every state and municipal employee. In reaching its conclusion, the Court distinguished federal regulation of private persons and businesses from similar regulation "directed, not to private citizens, but to the States as States." 426 U.S. at 845, 96 S.Ct. at 2471. The Court stated:

One undoubted attribute of state sovereignty is the States' power to determine the wages which shall be paid to those whom they employ in order to carry out their governmental functions, what hours those persons will work, and what compensation will be provided where these employees may be called upon to work overtime.

However, the court expressly disclaimed any intention of ruling on the constitutionality of the exercise of Congressional authority against the states pursuant to Section 5 of the Fourteenth Amendment. 426

U.S. at 852 n.17, 96 S.Ct. 2465. Four days later the court unanimously sustained the exercise of such power in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Justice Rehnquist was the author of both *Fitzpatrick* and *National League of Cities.* In *Fitzpatrick,* the Court upheld the constitutionality of the 1972 extension of Title VII of the Civil Rights Act to state and local government employers. The Supreme Court held that the 11th Amendment and the principle of state sovereignty which it embodies are necessarily limited by the enforcement provision of the Fourteenth Amendment. As a result, back pay and attorney fee awards under the Civil Rights Act, whereby Congress exercised its power under such enforcement provision, were not precluded by the Eleventh Amendment. Justice Rehnquist, writing for the unanimous court, reasoned:

> In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts. See *Edelman v. Jordan,* 415 U.S. 651, [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, [65 S.Ct. 347, 89 L.Ed. 389] (1945). (footnotes omitted).

*Id.* at 456, 96 S.Ct. at 2671.

■ The trial judge below fashioned a new legal doctrine which he called the "structural feature of constitutional federalism akin to the doctrine of separation of powers." Applied to the facts of this case, however, this doctrine is devoid of any constitutional substance. It constitutes no basis for allowing the states to discriminate against persons because of their sex, race, color, religion or national origin. The expansion of congressional power embodied in the Civil Rights Acts necessarily results in "the corresponding diminution of state sovereignty." 427 U.S. at 455, 96 S.Ct. at 2671. The Supreme Court's reasoning in *Fitzpatrick* seems as applicable to the instant case and the federalism doctrine put forth by the trial judge as it was to the Eleventh Amendment in *Fitzpatrick.* It is now beyond question that Congress has the power under Section 5 of the Fourteenth Amendment to prohibit sex discrimination in employment and that such power extends as well to the states as employers.

### III.

Our review of the record discloses a serious matter not raised by the parties in their briefs but which nonetheless requires comment by this court. On October 6, 1975, the appellant filed her complaint in this case. The University never filed an answer. Rather, on October 24, 1975, it filed its motion to dismiss. From that date until July 28, 1976, various replies and briefs relating to the motion as well as to the motion to dismiss on behalf of the defendants Gillis, Boone and Hermann were filed. On September 21, 1978, well over two years after all papers relating to the motions were filed, the district court disposed of the pending motions by granting dismissal of the action.

In our view, few, if any, circumstances can justify such a lengthy delay. Prompt and expeditious disposal of matters under submission is as important to the administration of justice and to the maintenance of public confidence in the judiciary as fair and impartial adjudication. It is essential, especially in this era of constant public scrutiny of our institutions, that our judiciary cooperate in preventing the erosion of public confidence.

## IV.

For the foregoing reasons, the judgment of the district court will be reversed.

Costs will be taxed against the appellees.