Rima E. BOSTICK, Plaintiff,

v.

Clarence D. RAPPLEYEA, Individually and as Assemblyman and Minority Leader, New York State Assembly, John C. Cochrane, Individually and as Assemblyman and Ranking Minority Member Assembly Ways and Means Comm., Richard A. Jacques, Individually and as Director of Minority Staff, Assembly Ways and Means Comm., Erman J. Cocci, Individually and as Ex-Director of Budget Studies, Assembly Ways and Means Comm., James Natoli, Individually and as Executive Director, Office of Minority Leader, New York State Assembly, James M. Catterson, Individually and as Executive Counsel to the Minority Leader, Peter C. Brown, Individually and as Director of Budget Studies Assembly Ways and Means Comm., Stanley Fink as Speaker of the New York State Assembly, Karen Burstein as President of the New York State Civil Service Commission and Commissioner of the New York State Department of Civil Service, Edward V. Regan, as Comptroller of the State of New York, Defendants.

No. 85–CV–15.

United States District Court,
N.D. New York.

July 5, 1985.

Feit & Schlenker, Albany, N.Y. (Michael A. Feit, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., Albany, N.Y. (Judith I. Ratner, Asst. Atty. Gen., of counsel), for defendants.

### MEMORANDUM–DECISION and ORDER

MINER, District Judge.

#### I

This action arises out of an alleged course of conduct on the part of defendants, various members of the New York State Assembly and minority staff administrators of the Assembly Ways and Means Committee, involving the denial to plaintiff Rima E. Bostick of equal employment opportunities in her position as a Legislative Budget Analyst for the minority staff of the Assembly Ways and Means Committee. The action is brought pursuant to 42 U.S.C. §§ 1983, 2000e and 29 U.S.C. §§ 206(d)(1), 621, and the complaint alleges that defendants' failure to appoint plaintiff to the position of director of budget studies and their continual discriminatory treatment of plaintiff in the areas of compensation and working conditions violated the first, fifth and fourteenth amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), and the Equal Pay Act, 29 U.S.C. § 206 ("EPA"). Jurisdiction is predicated upon 28 U.S.C. § 1343. Be-

fore the Court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment, Fed.R.Civ.P. 56(b).

## II

Since January of 1975, plaintiff has been employed as a Legislative Budget Analyst for the minority staff of the New York State Assembly Ways and Means Committee ("Committee"). As such, plaintiff's duties have included "conducting budgetary, personnel, workload, and other administrative critical reviews for legislators and administrators ... [and] drafting legislation, interpreting regulations and developing policy." Exhibit B to Affidavit of Richard A. Jacques at 2. Her immediate supervisor, and the individual to whom she reports, is the director of budget studies for the Committee. While at times plaintiff has had direct contact with Committee members and other elected officials, the majority of her duties have kept her in constant contact with other Committee employees.

In January of 1984, plaintiff submitted an application for the position of director of budget studies to defendant Jacques, director of minority staff for the Committee. Upon receiving the resume, defendant Jacques allegedly informed plaintiff that he had already decided to give the position to defendant Peter C. Brown, a fellow Assembly employee. Plaintiff then contacted defendant John C. Cochrane, ranking minority member of the Committee, and expressed to him her concern over not having been considered for the position. Defendant Cochrane informed plaintiff that the position had in fact not yet been filled and accepted her resume for consideration.

Plaintiff contends that over the next few weeks she was subjected to a variety of discriminatory practices which were aimed at discouraging her from seeking the position. Faced with this continuing conduct, plaintiff contacted defendant Charles D. Rappleyea, minority leader of the New York State Assembly, who informed plaintiff that he would appoint a mediator for her dispute. On March 28, 1984, the mediator issued a report determining that plaintiff's grievance was "legitimate and nonfrivolous" and recommending three alternative proposals for resolution of the dispute.[1] Defendant Rappleyea rejected the proposals and, on April 30, 1984, defendant Brown was appointed to the position of director of budget studies.

In light of defendant Rappleyea's decision not to follow the proposals of the mediator, plaintiff filed complaints with the New York State Division of Human Rights ("Division"), claiming that she had been subjected to unlawful discriminatory practices because of her age and sex. On July 26, 1984, the Division issued a decision finding no probable cause for plaintiff's complaint. From the time of this decision, plaintiff alleges that she has been subjected to further discriminatory conduct, in relation to wage increases and workload, directly attributable to her age and sex.

Plaintiff thus commenced this action against defendants Rappleyea, Cochrane, Jacques, Brown, Erman Cocci, former director of budget studies, James Natoli, Executive Director of the New York State Assembly Minority Staff, James J. Catterson, Executive Counsel to defendant Rappleyea, Stanley Fink, Speaker of the New York State Assembly, Karen Burstein, President of the New York Civil Service Commission, and Edward V. Regan, Comptroller of New York State, seeking declaratory and injunctive relief and damages for various violations of her constitutional and statutory rights. First, plaintiff asserts that defendants' conduct was "motivated by unlawful considerations and [was] committed under color of state law," Complaint, ¶ 65, thereby depriving plaintiff of her first, fifth and fourteenth amendment rights. Second, plaintiff argues that the same discriminatory conduct, allegedly

---

**1.** All three proposals either would have placed plaintiff in the position of director of budget studies or given her the opportunity to compete for the position with defendant Brown.

based upon sex and age, violated Title VII, the ADEA, and the EPA.

In moving to dismiss the complaint for failure to state a claim upon which relief can be granted, defendants contend that their actions relating to plaintiff's employment are cloaked with absolute legislative immunity. Arguing that "[p]laintiff's job function is an 'integral part' of the deliberative and communicative process by which the Assembly Ways and Means Committee members participate in committee and Assembly proceedings," Memorandum of Law in Support of Defendants' Motion to Dismiss at 9, defendants assert that the common law doctrine of legislative immunity necessarily must encompass decisions surrounding her employment. Second, in relation to the statutory claims, defendants contend that they are not "employers" or "agents" of an employer and therefore are not subject to a suit under Title VII.

### III

#### A. *Legislative Immunity*

■ The Supreme Court has established that members of a state legislature enjoy absolute immunity from civil damages actions when acting within "the sphere of legitimate legislative activity." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 731–32, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). State legislative immunity is a common law doctrine, *Star Distributors, Ltd. v. Marino*, 613 F.2d 4, 8 (2d Cir.1980), and has been extended to encompass legislative assistants as well. *Gravel v. United States*, 408 U.S. 606, 616–17, 92 S.Ct. 2614, 2622–23, 33 L.Ed.2d 583 (1972); *see Green v. DeCamp*, 612 F.2d 368 (8th Cir.1980). It is premised upon "the need for an independent legislative branch, free from the coercion of restraint imposed by inquiry from other governmental authority, as well as from the time consuming problem of legislators having to defend their official acts in court." *Agromayer v. Colberg*, 738 F.2d 55, 58 (1st Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 515, 83

L.Ed.2d 405 (1984). While legislative immunity does not extend to every act of a legislator, *id.* at 59, the test for its application has been whether the conduct at issue is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. at 625, 92 S.Ct. at 2627.

■ Here, defendants assert that the position of a Legislative Budget Analyst is an integral part of the process by which the Committee functions, and consequently, decisions affecting that position fall within the ambit of legislative immunity. According to defendants, the position "is intended to provide the Committee members with substantive and analytical information to permit them to vote on legislation in areas where they may have little or no expertise." Memorandum of Law in Support of Defendants' Motion to Dismiss at 9. Borrowing language from plaintiff's own resume, defendants assert that, as a Legislative Budget Analyst, she took an active role in the initial formulation of policy for minority members of the Committee.

After careful consideration of the facts and relevant case law, the Court concludes that the position of Legislative Budget Analyst is connected closely enough to the legislative process so that decisions regarding such position warrant the protection of legislative immunity, and thus, defendants' motion as to the § 1983 claim and the EPA claim is granted and those claims are dismissed.

Regardless whether plaintiff had direct contact with Committee members or whether she formulated policy, it is clear that, as a Legislative Budget Analyst, she had substantial input into preparing documents upon which Committee members later relied and in drafting proposed legislation. In light of other similar or more tangentially related activities which courts have determined to be integral to the legislative process, *e.g., Agromayer v. Colberg*, 738 F.2d 55 (1st Cir.) (position of legislative press officer held to be integral to the

legislative process), *cert. denied,* ——— U.S. ———, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984); *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir. 1973) (position of state senatorial page held to be integral to the legislative process); *Birdsong v. Dirck,* 633 F.Supp. 54 (E.D.Mo. 1984) (position of fiscal analyst to a state legislative committee held to be integral to the legislative process), it appears clear that plaintiff's current position must be considered so related.

*Agromayer* provides an appropriate comparison. There, plaintiff commenced a § 1983 action for the failure of the Speaker of the House of Representatives of the Commonwealth of Puerto Rico to designate him for employment as a legislative press officer. In applying absolute legislative immunity to the claims against the Speaker, the court noted that the fact that the duties of a press officer were not entirely legislative in nature was not a sufficient reason to exclude such employment from the scope of immunity. *Agromayer v. Colberg,* 738 F.2d at 60. The Court stated:

> Additionally, in applying the immunity we decline to inquire deeply into the functions performed by a particular personal legislative aide, inasmuch as such an inquiry itself threatens to undermine the principles that absolute immunity was intended to protect. Personal aides may perform a variety of tasks, only some of which are vital to the legislative process. The position at issue here is both ill-defined and open-ended, and not readily categorized as "legislative" or "non-legislative." However, we see enough opportunity for "meaningful input" into the legislative process such that the employment decision should be immunized.

*Id.* Consequently, *Agromayer* and its predecessors compel a similar result here.

■ This analysis, however, does not extend to the Title VII and ADEA claims that plaintiff has asserted.[2] In Title VII cases, the issue is not whether the common law principle of state legislative immunity should be extended to encompass the act in question, but whether the individual asserting the claim falls within the statutory definition of "employee." 42 U.S.C. § 2000e(f); *see, e.g., Goodwin v. Circuit Court of St. Louis County,* 729 F.2d 541 (8th Cir.1984), *cert. denied,* ——— U.S. ———, 105 S.Ct. 1194, 84 L.Ed.2d 339 (1985); *Anderson v. City of Albuquerque,* 690 F.2d 796 (10th Cir.1982); *Marafino v. St. Louis County Circuit Court,* 537 F.Supp. 206 (E.D.Mo.1982), *aff'd,* 707 F.2d 1005 (8th Cir.1983). Under Title VII, immunity concerns are accommodated through the exclusion of certain key legislative employees from the term "employee." Employee is defined as follows:

> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, *or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal power of the office.*

42 U.S.C. § 2000e(f) (emphasis added). Thus, unless the position of Legislative Budget Analyst is considered to be on a policymaking level or that of an immediate adviser to a Committee member, plaintiff would fall within the definition of "employee" and be able to maintain the action.

■ The legislative history of Title VII and its extension to public officials indicates that Congress intended the exclusions from employee status to be narrowly construed. *Joint Explanatory Statement of Managers at the Conference on H.R. 1746,* 92d Cong.2d Sess., *reprinted in* 1972 U.S.

---

**2.** The ADEA claim merits the same consideration as the Title VII claim, since the ADEA contains the same definition of "employee," and includes a State in its definition of "employer." 29 U.S.C. §§ 630(b), (f). The EPA claim, however, does not merit the same consideration, and thus, is encompassed in the Court's ruling on the legislative immunity issue. The EPA contains no language defining an "employee" in immunity terms.

Code Cong. & Ad.News 2137, 2179, 2180. As one court has noted:

> The purpose apparently was to provide exemption from the Act for public officials and those staff members or assistants whose selection by the elected official involves subtle considerations of the mixture of legislative or executive duties with the political facts of life. Realistically, some staff persons must be chosen with an eye not only to those functions which are characterized as those of a statesman, but as well those which are characterized as those of a politician. In short, most—but not all—elected officials are aware that they must keep an eye not only on the next generation but on the next election as well. Congress did not want State and local elective officials to be subjected to the strictures of the Equal Employment Opportunity Act in the selection of staff persons in sensitive or intimate positions. Congress, in using the term "immediate adviser," was trying to avoid exempting large groups of faceless technicians and researchers without sweeping into the Act the close personal policy-making advisers deemed to be vitally necessary for the conduct of executive and legislative business by officials who are necessarily politicians as well.

*Gearhart v. Oregon,* 410 F.Supp. 597, 600 (D.Ore.1976). Thus, while common law state legislative immunity has been expanded to encompass other than front-line legislative advisers, courts have limited the "policymaking" and "immediate adviser" exclusions under Title VII. *E.g., Anderson v. City of Albuquerque,* 690 F.2d 796 (10th Cir.1982) (research analyst for City Human Rights Board held to be an employee under Title VII); *Marafino v. St. Louis County Circuit Court,* 537 F.Supp. 206 (E.D.Mo.1982) (staff attorney in Juvenile Court held to be an employee under Title VII), *aff'd,* 707 F.2d 1005 (8th Cir.1983); *Gearhart v. Oregon,* 410 F.Supp. 597 (D.Ore.1976) (deputy legislative counsel held to be an employee under Title VII).

*Gearhart* provides an appropriate example of this restrictive approach. In *Gear-hart,* a former deputy legislative counsel to the State of Oregon brought a Title VII action against the State for alleged denials of equal pay and advancement. As a deputy legislative counsel, plaintiff was employed by the Legislative Counsel Committee of the Oregon State Assembly. Her duties included "drafting, research and other similar assistance provided to members of the Legislature as well as statute and annotation revision of [the Oregon Revised Statutes]." *Gearhart v. Oregon,* 410 F.Supp. at 599. In ruling that plaintiff's employment fell within the definition of employee, the court noted:

> While plaintiff was perhaps more than "just a law clerk," she was not a "first line adviser." Her responsibilities to legislators who called upon her for bill drafting, research and other allied chores were not of the sort that necessitate sensitive and intimate relationships of the sort that Congress seems to have had in mind when drafting the exemption.

*Id.* at 601.

At this stage of the litigation, *Gear-hart* and its progeny are convincing here. Plaintiff's position as a Legislative Budget Analyst appears not to be that of a front-line adviser to the members of the Committee. The majority of plaintiff's contacts in her employment are with other staff members. Her immediate supervisor is the director of budget studies, an administrative position. While a certain portion of her responsibilities includes drafting, research and initial input in formulating policy, her position appears no more "sensitive and intimate" to the legislative process than that of the deputy director in *Gearhart.* Accordingly, because the Court finds that common law legislative immunity is limited by the statutory definition of "employee" contained in Title VII and the ADEA, defendants' motion as to the Title VII and ADEA claims is denied. However, since no discovery has yet taken place and the factual record of plaintiff's direct involvement with members of the Committee as an adviser has not been developed, the Court grants the defendants leave to renew their

motion on the issue of whether plaintiff falls within the definition of "employee" pending further discovery.

### B. *"Employer" and "Agent" under Title VII*

Defendants further allege that the Title VII claim must be dismissed since they are not "employers" or "agents" of an employer, as required by Title VII. 42 U.S.C. § 2000e(b). Title VII defines "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Person is defined to include "governments, governmental agencies [and] political subdivisions." *Id.* § 2000e(a). Defendants contend that the economic reality test must be applied in determining whether one is an employer or agent under Title VII. *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984). In applying this test defendants point out that, since plaintiff's employer technically is the Assembly, and since staff members are chosen by the Chairman of the Committee, who is not a party to this action, they cannot be considered to have control or economic power over plaintiff.

■ For the most part, defendants' argument is flawed. The term "employer" under Title VII is to be liberally interpreted. *Rivas v. State Board For Community Colleges and Occupational Education,* 517 F.Supp. 467, 470 (D.Colo.1981). The term is not to be construed through an economic reality test, but rather "has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment." *Spirt v. Teachers Insurance and Annuity Associates,* 475 F.Supp. 1298, 1308 (S.D.N.Y.1979), *aff'd in part and rev'd in part on other grounds,* 691 F.2d 1054 (2d Cir.1982), *cert. denied,* — U.S. —, 105 S.Ct. 247, 83 L.Ed.2d 185

(1984). A person is an agent of an employer "if he participated in the decision making process that forms the basis of the discrimination." *Jones v. Metropolitan Denver Sewage Disposal District No. 1,* 537 F.Supp. 966, 970 (D.Colo.1982).

■ Here, it appears that the majority of the defendants fall within the ambit of the Title VII terms. While it is true that the State Assembly technically employs plaintiff and that the Committee Chairman officially appoints staff members, defendants admit that it is the custom and practice of the Committee for the ranking minority member of the Committee to fill the minority staff positions. In light of the liberal interpretation given to the term "employer" under Title VII, defendant Cochrane, as the ranking minority member of the Committee, could be considered to have had a certain amount of control over plaintiff's employment. As for defendants Jacques, Cocci, Natoli, and Brown, they too could be considered agents of the Assembly, the employer. All of these defendants held, or still hold, administrative positions with the Assembly wherein they, in some manner, assumed some form of supervisory control over plaintiff. Since plaintiff alleges in her complaint that the discriminatory practices were of an ongoing nature, encompassing all aspects of her duties and work environment, these defendants' areas of responsibility obviously were impacted. Accordingly, it appears that since each of these defendants controlled an aspect of plaintiff's conditions of employment, they fall within the Title VII terms. However, given that little factual information has been set forth by the parties as to the relationship of these defendants to plaintiff, the Court grants these defendants leave to renew their motion on this issue, pending further discovery.

■ Defendants Fink, Burstein, Regan, Rappleyea and Catterson, however, cannot be considered employers or agents for the purposes of this action, and thus the claims must be dismissed as against them. No allegations in the complaint link defendants Fink, Burstein or Regan to any control

over plaintiff's employment. They do not take part in appointing minority staff. They do not oversee any aspect of plaintiff's duties. As for defendant Rappleyea, plaintiff's allegations relating to his involvement concern his appointment of a mediator and his rejection of the mediator's proposals. None of these actions suggest that he is an agent of the employer with some control over plaintiff's appointment. He does not sit on the Committee at issue. Thus, he does not take part in appointing Legislative Budget Analysts to the Committee staff. Defendant Catterson, like defendant Rappleyea, is equally unrelated to plaintiff's situation. The claims against these two defendants, therefore, also must be dismissed.[3]

### IV

For all the foregoing reasons, defendants' motion for summary judgment is granted as to all claims relating to defendants Fink, Burstein, Regan, Rappleyea and Catterson. Defendants' motion further is granted as to the § 1983 claim and the EPA claim against all other defendants. In all other respects, the motion is denied with leave to renew on the issues of whether plaintiff is an "employee" and whether the remaining defendants are "agents" or "employers" under the terms of Title VII and the ADEA.

---

**3.** Defendants also assert an eleventh amendment defense to plaintiff's claims. Because only Title VII and ADEA claims remain, no eleventh amendment bar exists. *See Shawer v. Indiana* *University of Pennsylvania,* 602 F.2d 1161 (3d Cir.1979) (Congress abrogated immunity of states to Title VII claims by including States within the definition of "employer").