**Edward W. AUSTIN and Henry L. McPEAK, Plaintiffs,**

v.

**CORNELL UNIVERSITY, Richard Costello, and William Szabo, Defendants.**

**Civ. A. No. 94–CV–570.**

United States District Court, N.D. New York.

July 20, 1995.

Pinnisi, Wagner, Sherwyn & Geldenhuys, P.C. (Michael D. Pinnisi, Paul E. Wagner, of counsel), Ithaca, NY, for plaintiffs.

Office of the University Counsel (Thomas Mead Santoro, Valerie L. Cross, of counsel), Cornell University, Ithaca, NY, for defendants.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

## INTRODUCTION

In this age discrimination lawsuit, defendants Cornell University, Richard Costello and William Szabo (collectively, "Cornell") moved for summary judgment against plaintiffs Edward W. Austin and Henry L. McPeak, who previously held seasonal positions at Cornell's golf course. In the alternative, Cornell sought summary judgment dismissing the complaint against the individual defendants, Costello and Szabo. Finally, Cornell moved to strike Paragraph 24 of plaintiffs' complaint because it refers to settlement discussions. Because I find that Austin and McPeak raised genuine issues of material fact regarding Cornell's refusal to rehire them, Cornell's motion for summary judgment is denied. Additionally, I find as a matter of law that plaintiffs can maintain this action against the individual defendants. However, I grant defendants' motion to strike Paragraph 24 of the complaint.

## BACKGROUND

Cornell owns, operates, and maintains the Robert Trent Jones Golf Course in Ithaca. At all times relevant to this lawsuit, defendant Costello was the Head Golf Professional at the Ithaca course, and defendant Szabo was Cornell's Associate Director of Athletics for Operations and Facilities in charge of overseeing the course. Plaintiffs Austin and McPeak each worked at the golf course over several summer seasons.[1] McPeak, who formerly worked full time at Cornell, worked as a volunteer ranger from 1988 until 1990 and as a paid ranger in 1991 and 1992. Austin worked primarily in the golf course's pro shop from 1988 until 1991 and as a ranger in 1992. The duties of a golf course ranger include monitoring play on the course to ensure that members are complying with golf etiquette and playing fast enough to prevent bottlenecks and gaps in play on the course.

Before the start of the 1993 golf season, Cornell decided not to rehire Austin and McPeak. Costello, Szabo, and Richard Deibert, the golf course superintendent, jointly made the decision. At the time of this action, McPeak was 67 years old and Austin was 73 years old. Costello told Austin and McPeak during separate telephone conversations that the golf course was undergoing a reorganization in which Cornell would not need their services and that plaintiffs should not take the decision personally. Costello

---

1. Plaintiffs only worked during the golfing season, which generally ran from April through October or November, and Cornell did not employ them during the winter.

did not tell plaintiffs that their prior service had been deficient in any way. Costello also did not ask plaintiffs whether they would have been willing to work increased hours.

According to the deposition testimony of Costello, Szabo and Deibert, the reorganization stemmed from Cornell's decision to lower golf course fees and thus increase membership. To accommodate the anticipated increased use of the course, Cornell instituted a "double wave" system of play in which parties would tee off simultaneously on the first and tenth holes, play their nine holes, and then cross over to finish the remaining nine holes on the course. The double wave system required course rangers to work harder in monitoring the pace of play and in coordinating cross-overs. The golf course reorganization also included the consolidation of approximately 20 seasonal positions into about 16 or 17 jobs. Fewer people worked more hours to perform the same work. Szabo testified that he wanted to reduce the number of people on the Cornell payroll.

Costello, Szabo and Deibert concluded in March 1993 that McPeak and Austin were not qualified for the ranger duties. Defendants claim that during the 1992 season, they received numerous complaints from members regarding the slow rate of play on the golf course. Deibert and Costello also claim to have observed problems on the course such as bottlenecks, and Deibert claims to have seen plaintiffs socializing or looking for lost golf balls instead of monitoring play on the course. Moreover, in early 1993, Cornell sent a questionnaire to golf course members to elicit their comments about different aspects of the course, including the facilities, the pro shop, the nearby restaurant/club house, and the staff. Cornell received 158 responses to approximately 200 survey questionnaires, and 48 of those responses contained complaints about the slow rate of play on the course or the performance of rangers. Defendants claim that these complaints established that Austin and McPeak could not perform their current ranger duties, let alone the increased responsibilities associated with the new double wave system of play. Al-

though plaintiffs' poor performance was a factor in defendants' decision not to rehire Austin and McPeak, Cornell decided not to tell this reason to plaintiffs in an effort to spare their feelings.

Defendants also contend that plaintiffs were not qualified to work as rangers under the reorganization plan because they did not want to work increased hours. Costello testified in his deposition that Austin "insisted that he work a limited number of hours a week because he had a cottage on the lake and wanted to spend time there." Pl. Decl.Ex. C, at 45. Costello stated in an affidavit that McPeak also worked limited hours and at times left work early to suit his personal plans even though heavy traffic on the golf course was expected. In 1992, each plaintiff worked about 10 hours per week, and they rarely worked at the same time.

Both Austin and McPeak testified during their depositions that Cornell never criticized their performance as rangers. Rather, they claimed that their work was praised.[2] Because plaintiffs were seasonal workers, Cornell did not conduct formal evaluations of their performance. In his deposition, Costello, who served as plaintiffs' immediate supervisor, testified that he tried to manage his employees using positive reinforcement rather than criticism. Referring to McPeak, Costello stated that "I would emphasize something rather than de-emphasize it. In other words, I would refer to we've got a bottleneck on three, you gotta watch it. We've got a problem crossing over, you gotta watch it. . . . I didn't call him in and swear at him, that's not my style, I didn't do that. I did it in what I considered a diplomatic way and hoped it would be effective." Pl.Decl.Ex. C, at 42. Costello stated that he used a similar "positive" approach with respect to managing Austin. *Id.* at 45. Defendant Szabo testified that plaintiffs were aware or should have been aware that their performance was lacking, but Szabo did not know whether Deibert or Costello had so informed plaintiffs. Pl.Decl.Ex. F, at 44.

After deciding not to rehire plaintiffs, Cornell placed an advertisement in a local news-

---

**2.** Defendant Costello admits that he wrote a favorable letter of recommendation for McPeak. However, he did not recall when he wrote the letter, which is not dated. Pl.Decl.Ex. C, at 89.

paper for the ranger positions. Cornell eventually hired four people to work as rangers during the 1993 golf season, although no more than three rangers were employed simultaneously during the season. All four of these employees were younger than plaintiffs. Three individuals were in their 20s, and one employee was in his 50s.

On October 14, 1993, plaintiffs filed complaints with the Equal Employment Opportunity Commission and the New York State Division of Human Rights, alleging that Cornell discriminated against them because of their age. Cornell denied liability by letter dated December 13, 1993, and the state complaints remain pending. Plaintiffs subsequently filed a complaint in district court on May 4, 1994, alleging that defendants were liable for age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. Plaintiffs requested declaratory and injunctive relief as well as back pay, compensatory and punitive damages, and costs and attorney's fees. The parties completed discovery, and defendants now seek, among other things, summary judgment dismissing the complaint. Oral argument on the motions took place on June 5, 1995.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,*

504 U.S. 451, 456, 112 S.Ct. 2072, 2076–77, 119 L.Ed.2d 265 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. Age Discrimination Claim

Defendants contend that they are entitled to summary judgment because Austin and McPeak failed to raise genuine issues of material fact with respect to their age discrimination claims. Specifically, Cornell argues that it did not rehire plaintiffs because they were not qualified to work as rangers at the reorganized golf course. Plaintiffs respond that they have sufficient evidence of defendants' discriminatory intent.

Plaintiffs' claims under the ADEA are governed by the familiar burden-shifting analysis of *McDonnell Douglas–Burdine.*[3]

---

3. Austin and McPeak also argue that they have direct evidence of discrimination so that summary judgment is improper and the burden-shifting analysis does not apply. In cases of direct discrimination, plaintiffs must establish that age played a motivating or substantial role in the employment decision, and the defendant then must prove that it would have made the same decision even if it had not taken age into account. *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir.1989). Here, none of the evidence, which is described below in my discussion of pretext, directly shows that Cornell's decision was motivated substantially by discrimination. The plaintiffs' most direct evidence of age discrimination is a comment regarding senior citizens on the survey completed by Jim Fenner, the former Head Golf Professional at the Cornell course. However, there is no contention that Fenner played a role in Cornell's employment decision. Moreover, none of the defendants testified that he adopted or otherwise relied on the Fenner survey. Discriminatory comments made by people not involved in the relevant decision-making process will not support a claim of direct discrimination. *Kirschner v. Office of the Comptroller,* 973 F.2d 88, 93 (2d Cir.1992). Therefore, plaintiffs' evidence of discrimination is circumstantial, and the *McDonnell Douglas–Burdine* analytical framework applies.

*EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2d Cir.1994) (citations omitted). Plaintiffs first must create an inference of discrimination by establishing a prima facie case by a preponderance of the evidence. *Id.* Defendants then have a burden of production to offer a legitimate, nondiscriminatory reason for the employment decision. *Id.* In order to prevail, plaintiffs finally must demonstrate that defendants' articulated reason was merely a pretext for discrimination. *Id.* The ultimate burden of proving age discrimination always remains with plaintiffs. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### A. Unlawful Termination Claim

 In their complaint, plaintiffs claim that Cornell discriminated against them "by dismissing them and/or denying them employment on the basis of their age." Compl. ¶ 30. Defendants argue first that plaintiffs presented no prima facie case of unlawful termination because Austin and McPeak were seasonal employees whose limited term of employment ended at the completion of the 1992 golf season. Unlawful termination cannot occur where a party is not an employee at the time of the alleged discrimination. *See Hyland v. New Haven Radiology Assocs.,* 794 F.2d 793, 796 (2d Cir.1986).

Plaintiffs have not responded to this argument. Indeed, during his deposition, McPeak admitted that he was not claiming Cornell dismissed him but rather that Cornell failed to rehire him for the 1993 golf season. Def.Aff.Ex. E, at 135. Similarly, Austin stated during his deposition that Cornell never hired him to work during the 1993 golf season. *Id.* Ex. D, at 93–94. Thus, there is no dispute that Austin and McPeak were seasonal employees. Any claim of unlawful termination therefore is dismissed for plaintiffs' failure to establish a prima facie case.

### B. Unlawful Refusal to Hire

Defendants next contend that plaintiffs failed to establish a prima facie case of unlawful refusal to hire because Austin and McPeak were not qualified for the 1993 ranger positions. Plaintiffs respond that they raised genuine issues of fact with respect to their ability to work as rangers. Moreover, plaintiffs contend they produced sufficient evidence that Cornell's explanation for its action is merely a pretext for discrimination.

### 1. Prima Facie Case

 In order to make a prima facie case of unlawful refusal to hire, plaintiffs must show that (1) they belong to the protected age group; (2) they applied for and were qualified for the ranger positions; (3) they were not hired despite their qualifications; and (4) the ranger positions ultimately were filled by younger people. *Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991). The relevant inquiry is whether the plaintiffs were rejected "because of circumstances which give rise to an inference of unlawful discrimination." *Id.* Direct evidence, statistical evidence, or circumstantial evidence will support the inference of discrimination. *Id.* There is no dispute that Austin and McPeak are both older than 40 and thus within the age group protected by the ADEA. *See* 29 U.S.C. § 631(a). Similarly, there is no dispute that Cornell did not hire plaintiffs and that people younger than plaintiffs filled the ranger positions in 1993. However, Cornell contends that plaintiffs failed to show that they applied and were qualified for the ranger positions.

Cornell claims that only McPeak applied for the 1993 ranger position because he called Costello several times in the spring of 1993 to inquire about his work starting date. Cornell argues that Austin merely expected to be rehired by virtue of his friendship with Costello and thus never applied for the job. However, all of the deposition testimony consistently establishes that Cornell never had required an application from either McPeak or Austin. The employment relationship was informal, a fact that counsel for Cornell readily admitted during oral argument. For example, the golf course staff ended each season with a pizza party, after which they parted for the winter with statements such as, "See you next year." Def.Aff.Ex. D, at 93. Austin had worked under these conditions since 1988, which shows at the very least that Austin legitimately expected to be

considered for 1993 seasonal positions, even if he had not formally applied for them.

■ It is a question of fact whether a person must make a formal job application, and the answer is dependent on the employer's practices. *See Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 825 (2d Cir.1992). Thus, considering the evidence in the light most favorable to plaintiffs, they both applied for the 1993 ranger positions. At a minimum, an issue of fact exists with respect to whether Austin applied for the job, and this issue precludes summary judgment.

Cornell next contends that plaintiffs failed to show they were qualified for the ranger positions in 1993 because (1) their performance in 1992 had been unsatisfactory; and (2) the golf course reorganization required them to work more hours and monitor the double wave system of play. Austin and McPeak do not address defendants' argument concerning increased hours of work. However, they claim that their performance in 1992 was satisfactory because defendants never criticized them and instead praised their work. In addition, plaintiffs contend that they were able to understand and implement the double wave system of play.

■ To establish a prima facie claim, plaintiffs need only make "a minimal showing of qualification" and demonstrate that they possess the basic skills necessary to perform the job. *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 409 (2d Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991) (citation omitted). *See also Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (holding that plaintiff in employment discrimination case has a *de minimis* burden at prima facie stage). Because Austin and McPeak worked as rangers in 1992 and received no criticism from their supervisors, they raised an issue of fact as to whether they were qualified to work as rangers in 1993.[4] Defendant Szabo testified that plaintiffs could understand the new double wave system of play, although he also

stated his belief that plaintiffs could not implement it successfully. Def.Reply Aff.Ex. C, at 121–22. Moreover, it is undisputed that defendants only assumed that plaintiffs would not work longer hours. Drawing all reasonable inferences in favor of the nonmoving plaintiffs, a trier of fact could conclude that Austin and McPeak possessed the basic skills required to work as rangers and thus were qualified for the 1993 seasonal positions.

**2. Nondiscriminatory Rationale**

■ Because plaintiffs established a prima facie case, the burden of production shifts to defendants to offer a legitimate, nondiscriminatory reason for their decision. Defendants claim that plaintiffs were not rehired because they could not perform satisfactorily in the reorganized ranger positions, which demanded working increased hours and closer monitoring of play. Cornell based its assessment of plaintiffs' performance on the complaints it received from golfers, the defendants' own observations, and the survey responses it collected. On its face, the golf course reorganization is an age-neutral reason for defendants' decision.

**3. Pretext for Discrimination**

■ The burden shifts again to plaintiffs to show that Cornell's justification is a pretext for age discrimination. Plaintiffs must produce "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employees['] age was the real reason for the [employment actions]." *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994) (citation omitted); *see also Gallo,* 22 F.3d at 1224–25. Austin and McPeak claim that the following facts constitute evidence of Cornell's discrimination: (1) Deibert stated during his deposition that he thought Cornell should "try some fresh help for the ranger

---

**4.** As described more fully below, Cornell claims that plaintiffs should have known their performance was poor early in the 1992 season when defendants distributed a two-page document listing ranger job duties. Costello Aff. of 3/8/95, Ex.

A. However, this document merely contains a neutral description of tasks and at best raises an issue of fact as to whether it constituted criticism.

positions;"[5] (2) Szabo testified during his deposition that he thought Austin was too timid to be a good ranger and that neither plaintiff could handle the stress of the job, Pl.Decl.Ex. F, at 95, 109; (3) A golf course survey returned by former Head Golf Professional Jim Fenner stated that "you can't run a pro shop with part-time senior citizens," *id.* Ex. H; (4) Cornell encouraged students to apply for the ranger positions and hired four inexperienced people younger than plaintiffs for the jobs; (5) Cornell never criticized plaintiffs' performance, never disciplined them, and never gave them an opportunity to improve; and (6) Cornell initially did not tell plaintiffs that their poor performance was a factor in Cornell's decision. Drawing all reasonable inferences in favor of the non-moving plaintiffs, at least some of these facts support the conclusion that age discrimination was the reason for Cornell's action.

First, the "fresh help" comment, the Fenner survey and the perception that Austin was timid taken together may lead to the rational conclusion that Cornell based its decision on plaintiffs' ages. Even if defendants did not directly adopt Fenner's statement, there is no dispute that they read the survey.[6] Moreover, because Fenner was the former Head Golf Professional at the Cornell course, a jury reasonably could infer that his opinion carried more weight in defendants' considerations. Finally, the "fresh help" and "timid" comments reasonably can relate to age-based stereotypes regarding plaintiffs. *Cf. Grant,* 880 F.2d at 1569 (comments reflecting age stereotypes can constitute direct evidence of age discrimination).

Second, because plaintiffs were replaced with workers having no ranger experience, they established a permissible inference of discrimination.[7] *See Gallo,* 22 F.3d at 1227 (employer's claim that plaintiff lacked necessary job experience was undercut by fact that employer hired other workers lacking specific experience). On the other hand, that Cornell may have encouraged students to apply for the positions is irrelevant to the issue of discrimination because there is no evidence that Cornell limited the applicant pool to students, and only one of the four rangers hired was a student. There is no dispute that all four rangers hired in 1993 were younger than plaintiffs.

Third, the fact that defendants never criticized plaintiffs' performance in 1992 can lead to the rational inference that their performance was satisfactory and that defendants' current claim to the contrary is pretextual.[8] Cornell never told Austin and McPeak about this reason for its decision, which lends further credence to the conclusion that Cornell created this rationale after making its employment decision and after plaintiffs filed their complaints. *See Chambers,* 43 F.3d at 39 (holding that plaintiff established an inference of race and national origin discrimination where plaintiff's alleged poor performance was not documented in his personnel file and defendants did not inform plaintiff upon his discharge that poor performance was the reason).

During oral argument, counsel for Cornell argued that plaintiffs should have been aware that their performance was poor early in the 1992 season, when Cornell gave them each a two-page document entitled "Ranger Duties." This document lists 13 tasks as well as the hours of ranger coverage. The bot-

---

5. Def.Reply Aff.Ex. B, at 59. Plaintiffs also claim that Deibert said Cornell needed "fresh blood" among the seasonal golf course staff, but it is clear from his deposition testimony that plaintiffs' counsel rather than Deibert used that phrase. *Id.* at 62, 66.

6. In arguing that the survey and reorganization were legitimate and their proffered rationale was not pretextual, defendants claim that two other golf course or club house employees were not rehired due to the survey results and attendant reorganization. This fact, however, does not compel the inference that plaintiffs were not rehired solely because of the reorganization. Other evidence supports the opposite inference

that plaintiffs' age was the real reason for their discharge.

7. At oral argument, counsel for Cornell stated that these applicants, unlike plaintiffs, did not carry the baggage of a poor performance record. The issue of plaintiffs' performance is addressed next.

8. Cornell claims that the survey results are proof of plaintiffs' poor performance. However, there is no dispute that plaintiffs never saw these surveys and thus did not receive any job criticism related to them.

tom of the document contains the unenumerated statement, "Our mission is to enforce fast play, golf course management, increase good public relations and for everyone to have a [sic] enjoyable time." Costello Aff. of 3/8/95, Ex. A. At best, this neutral language raises an issue of fact as to whether it should have put plaintiffs on notice that they needed to improve their performance. During his deposition, Austin stated that no supervisor gave him instructions at the time he received the list and that the ranger duties already were "quite apparent" to him. Def.Aff.Ex. D, at 44–45. McPeak testified that he never spoke with Costello about the list and that he already was performing each of the tasks on the list. *Id.* Ex. E, at 80–82. Thus, it would be entirely reasonable for a jury to conclude that the "Ranger Duties" document did not constitute criticism.

Moreover, although Costello testified that negative criticism was not his management style, this legitimate explanation for the lack of criticism of plaintiffs' performance is only one of several permissible inferences. *Chambers,* 43 F.3d at 39. Similarly, while it may be true that defendants never cited poor performance as a reason for their decision in an effort to spare plaintiffs' feelings, a jury also could interpret the facts to show that defendants' performance rationale for their decision is a pretext. Cornell argues that the lack of criticism in 1992 is irrelevant to its 1993 seasonal hiring decisions. However, the defendants' testimony shows that they based their evaluations of plaintiffs' ability to monitor the 1993 double wave system of play on plaintiffs' 1992 performance. For example, defendant Costello answered affirmatively when counsel for plaintiffs asked him whether he decided not to rehire plaintiffs in 1993 because he "had come to the view that their performance in the 1992 season was inadequate." Pl.Decl.Ex. C, at 58. Contrary to Cornell's assertion, this is not a case where defendants were being asked to give plaintiffs a "second chance" at being rangers. Consequently, a number of unresolved factual issues exist regarding plaintiffs' alleged poor performance.

■ Finally, although not raised by plaintiffs, the fact that Cornell never asked Austin or McPeak whether they would work increased hours undercuts this otherwise legitimate consideration. At oral argument, counsel for defendants stated that Cornell "assumed" and "perceived" that plaintiffs would not work 20 hours per week, based on their comments and behavior. However, defendants cannot assume plaintiffs' response and then base their decision on this assumption. *Cf. Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 205–06 (2d Cir.1995) (holding that inference of age discrimination was supported by fact that employer experiencing a reduction-in-force never surfaced plaintiff's name for positions for which he was qualified).

Consequently, with respect to their refusal to hire claim, Austin and McPeak established a prima facie case of age discrimination, which Cornell effectively rebutted by articulating the golf course reorganization as the legitimate basis for its decision. However, plaintiffs raised genuine issues with respect to whether Cornell's explanation was pretextual. A rational trier of fact, drawing all reasonable inferences in favor of plaintiffs, could conclude that age more likely than not was the basis of Cornell's decision. Defendants' motion for summary judgment regarding this claim therefore is denied. However, because plaintiffs conceded that they were seasonal workers, they failed to establish a claim of unlawful termination. Defendants' motion for summary judgment regarding this claim is granted.

### III. Individual Liability

■ Cornell contends in the alternative that individual defendants Costello and Szabo cannot be held liable for discrimination under the ADEA. Defendants argue that these individuals are not "employers" as defined by 29 U.S.C. § 630(b), which establishes the scope of ADEA liability. Plaintiffs respond that individual agents of an employer may be held liable for age discrimination if they exercised supervisory control over the disputed employment decision.

The provisions of the ADEA apply to an "employer." 29 U.S.C. § 623(a). The ADEA defines employer as "a person engaged in an industry affecting commerce who has twenty or more employees for each

working day in each of twenty or more calendar weeks in the current or preceding calendar year ... [and] [t]he term also means ... any agent of such a person...." *Id.* § 630(b). A number of Circuit Courts of Appeals have held that because the ADEA applies only to employers with at least twenty workers, it would be incongruous to impose ADEA liability on a single individual. *See, e.g., Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). These courts held that an individual's discriminatory actions merely create liability for the employer under the theory of respondeat superior. *Birkbeck,* 30 F.3d at 510.

■ Because the Second Circuit Court of Appeals has not decided this issue, Cornell urges me to adopt the reasoning of other circuits and hold that the ADEA does not permit individual liability. However, district courts in the Second Circuit have interpreted the ADEA definition of employer to hold that individuals may be liable for age discrimination if they are the "agents" of an employer. *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 134 (N.D.N.Y.1990) (McCurn, C.J.); *Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y.1985), *aff'd,* 907 F.2d 144 (2d Cir.1990). *But see Coraggio v. Time Inc. Magazine Co.,* 1995 WL 242047, *7–8 (S.D.N.Y.1995). In both *Wanamaker* and *Bostick,* the district court held that individuals are agents of the employer if they participate in the alleged discriminatory decision making process and "control some aspect of an individual's compensation, terms, conditions, or privileges of employment." *Wanamaker,* 740 F.Supp. at 134 (quoting *Bostick,* 629 F.Supp. at 1334). Contrary to Cornell's assertion, the application of individual liability is not limited to individuals acting as president, board member, trustee, or partner of an employer but instead focuses on the individual's function in the workplace. *Bostick,* 629 F.Supp. at 1334–35.

In the context of an analogous Title VII action, a district court in the Second Circuit has held that voting members of a corporate board cannot be held liable for the corporate entity's discriminatory acts *unless* the individuals exercise "supervisory control, such that they are vested with *independent* authority to effectuate employment decisions...." *DeWald v. Amsterdam Hous. Auth.,* 823 F.Supp. 94, 103 (N.D.N.Y.1993) (emphasis in original). Similarly, a hospital employee was held individually liable under Title VII because he possessed independent authority to effectuate plaintiff's termination and was responsible for the termination. *Dirschel v. Speck,* 1994 WL 330262, *6 (S.D.N.Y.1994). *But see Bradley v. Consolidated Edison Co.,* 657 F.Supp. 197, 207 (S.D.N.Y.1987) (holding that individuals acting within scope of authority were not employers or agents thereof under Title VII). *DeWald* and *Dirschel* are consistent with *Wanamaker* and *Bostick* because of the analytical focus on individual control over disputed employment decisions.

Although courts are divided on the imposition of individual liability under the ADEA, I will adopt the reasoning of prior decisions in the Northern District of New York. Thus, Costello and Szabo may be individually liable for discriminatory acts they performed while exercising supervisory control over plaintiffs' employment. In this case, it is clear that defendants Szabo and Costello controlled plaintiffs' employment with Cornell. There is no dispute that they, along with Deibert, jointly decided not to rehire plaintiffs. Moreover, Costello was plaintiffs' direct supervisor. Thus, the individual defendants participated in the process that plaintiffs claim was discriminatory, and I will not dismiss the complaint against them. Defendants' motion accordingly is denied.

## IV. Motion to Strike Paragraph 24

■ Cornell finally requests that I strike Paragraph 24 of the complaint because complaints often are admitted into evidence, and this paragraph concerns settlement discussions of which the jury should not be informed. Plaintiffs respond that the paragraph is evidence that Cornell's discrimination was wilful because it failed to cure the discrimination despite notice from plaintiffs. Because punitive damages are permitted in

cases of wilful discrimination, Austin and McPeak argue that the paragraph is relevant to the issue of damages but not liability.

 Rule 408 of the Federal Rules of Evidence excludes evidence of compromise negotiations offered to prove liability. Fed. R.Evid. 408. Application of the rule may involve factual issues, such as whether the offer was made in the course of settlement negotiations, and the court determines these facts. *Pierce*, 955 F.2d at 827. An offer is presumed to fall within Rule 408 if "a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation." *Id.* The case cited by plaintiffs, *Cassino v. Reichhold Chems.*, 817 F.2d 1338, 1342 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988), holds no differently.

Paragraph 24 of plaintiffs' complaint states:

> Plaintiffs attempted to resolve their dispute with defendants by contacting the Cornell University counsel's office to report that they had been dismissed on the basis of their age. After a brief investigation into the matter, the University counsel's office found "no basis for [a] claim of age discrimination or any other illegal discrimination in this case" and declined plaintiffs' request for conciliation.

Compl. ¶ 24. This paragraph clearly concerns settlement negotiations covered by Rule 408. The paragraph alludes to correspondence between plaintiffs' counsel and Cornell. At the time these letters were written, plaintiffs were represented by counsel and had an actual dispute with Cornell regarding its employment decision. The letters in the record clearly show that plaintiffs' counsel aimed to achieve a settlement, and counsel even proposed a settlement amount. One of the letters was written after plaintiffs filed their claims with the EEOC, which is an initial step in litigation. Moreover, by using terms such as "resolve" and "conciliation," the very language of the paragraph concerns settlement rather than notice as plaintiffs now contend. Thus, Paragraph 24 alludes to settlement negotiations and falls within the scope of Rule 408. I therefore grant defendants' request to strike the paragraph from the complaint. Plaintiffs may be given an opportunity at trial to submit appropriate evidence to prove wilful discrimination.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied with respect to plaintiffs' claims of unlawful refusal to hire. Defendants' motion for summary judgment on plaintiffs' unlawful termination claims is granted. In addition, because I find that the ADEA permits individual liability, I deny defendants' motion for summary judgment dismissing the complaint against Costello and Szabo. Finally, I grant defendants' motion to strike Paragraph 24 of the complaint because it refers to settlement discussions between the parties.

IT IS SO ORDERED.