William M. **WALSH,** Plaintiff,

v.

The **CITY OF AUBURN,** Mayor Guy Cosentino, Councillor Ann Bunker, Councillor James Hutchinson, City Manager James Malone, Corporation Counsel Andrew LaLonde, Solid Waste Director Robert Becker, Mark Fandrich, Ex–Councillor, General Counsel, New York State Division of Human Rights, General Counsel, United States Equal Employment Opportunity Commission, Auburn, New York Civil Service Commission, Defendants.

No. 95–CV–606.

United States District Court, N.D. of New York.

Oct. 15, 1996.

---

William W. Walsh, Auburn, NY, plaintiff, pro se.

Corporation Counsel, New York Civil Service Com'n, Auburn, NY (Mary P. Walsh, Assistant Corporation Counsel, of counsel), for Defendants City of Auburn and Consentino, Bunker, Hutchinson, Malone, LaLonde, Becker and Fandrich.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (David B. Roberts, Assistant Attorney General, of counsel), for General Counsel N.Y.S. Division of Human Rights.

### MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Plaintiff William W. Walsh, former recycling administrator for the City of Auburn ("Auburn"), commenced this civil rights action on May 5, 1995. Walsh claims that Auburn and various of its public officials discriminated against him because of his age and that certain officials also denied him a right to free speech in violation of the First Amendment. Walsh also sued other defendants including the General Counsel for the New York State Division of Human Rights ("DHR") and the Auburn Civil Service Commission. Walsh makes his age discrimination

claim pursuant to the Age Discrimination in Employment Act ("ADEA"). Although Walsh does not identify a statutory basis for his First Amendment claim, 42 U.S.C. § 1983 governs this claim.

All of the defendants moved for dismissal pursuant to Fed.R.Civ.P. 12. I grant the Auburn Civil Service Commission's motion on stipulation. I grant DHR's motion because (1) DHR has sovereign immunity, (2) DHR is not Walsh's employer for ADEA purposes, and, (3) Walsh does not claim that DHR interfered with his right to free speech. I also dismiss Walsh's ADEA claims against the remaining individual defendants because those individuals are not subject to suit under the ADEA. I reject the argument made by certain defendants that the doctrine of *res judicata* bars Walsh's ADEA claims in their entirety as well as the contention that Walsh failed to state a claim under the ADEA. Walsh's First Amendment claim against the City of Auburn also survives this dismissal motion. However, qualified immunity bars his First Amendment damages claim against the individual defendants.

## BACKGROUND

### I. Allegations of the Complaint

As I must on a Rule 12(b)(6) motion, I accept the allegations of the complaint as true. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Walsh, who in May 1995 was sixty-five years old, began work as Auburn's recycling administrator on September 7, 1989. Compl. ¶¶ 1, 7–A(A)(7). On May 7, 1992, City Manager James Malone told Walsh that his job would be eliminated.

Compl. ¶ 7–A(B)(1). Walsh asked if any other jobs would be available, and Malone responded negatively. *Id.* Walsh left the City's employment on June 30, 1992. *Id.* ¶ 1. After eliminating Walsh's job, Malone created certain new positions including solid waste director, assistant solid waste director, weigh master, and motor equipment operator. *Id.* ¶ 7–A(A)(1). The employees hired for these jobs are all younger than Walsh, and the solid waste director, assistant solid waste director, and motor equipment operator perform significant portions of Walsh's former job. *Id.* ¶ 7–A(A)(2), (5). Walsh alleges that age discrimination and retaliation for a successful protest of an earlier attempt by defendants to eliminate his job motivated both his firing and Malone's failure to hire him for one of the new jobs. *Id.* ¶ 7–A(F)(1)–(2), (5), (8).

On August 23, 1993, Auburn Solid Waste Director Robert Becker at the direction of Corporation Counsel Andrew LaLonde wrote a memo that instructed solid waste facility staff not to engage in conversations with Walsh at the solid waste facility. Compl. ¶ 7–A(E), Ex. 19. The memo, which was copied to Malone, also indicated that it would be in the department's best interests that employees not discuss the department's business with Walsh off site.[1]

### II. Procedural Background

Plaintiff filed a complaint with DHR and the United States Equal Employment Opportunity Commission ("EEOC") on November 10, 1992. DHR issued a finding of no probable cause on October 6, 1994. This determination notified Walsh that seeking state judicial review could cause him to lose his right to bring an action in federal court. Compl.

---

1. In pertinent part, the memo states:

   As you know, Mr. Walsh has been involved with claims and suits against the City regarding his termination as Recycling Coordinator . . . .
   We have been advised by Mr. LaLonde . . . [that it is not] in the City's best interest to engage in and (sic) conversations about Department operations, plans, personnel deployment, or finances. Please instruct our SWMC staff not to engage in conversations with Mr. Walsh while he is present on site. It would be in our best interest not to discuss the Department's business with him off site, either. If he has any questions about construction activities, our workforce, out (sic) equipment, our recycling efforts, the marketing of recycled products, and so on, please see to it that our staff refers all such questions to me . . .
   Compl.Ex. 19.

Ex. 18. EEOC notified Walsh of its finding that he had not established a violation of Title VII on February 17, 1995. *Id.* Ex. 21.

After DHR's no probable cause finding but before the EEOC determination, Walsh brought a state court action.[2] In this lawsuit, Walsh sued the City of Auburn, Malone, Becker, LaLonde, Auburn City Councillors Ann Bunker, James Hutchinson, and Mark Fandrich and Mayor Guy Cosentino. *Walsh v. City of Auburn,* No. 94–5994 (Supreme Ct. Cayuga Cty.), Notice of Petition. Walsh purported to bring his suit pursuant to New York's Human Rights Law, N.Y.Exec.L. § 290 *et seq.,* the ADEA, and the New York Civil Service Law. *Id.* He sought a declaratory judgment that the various defendants/respondents had violated the ADEA, reinstatement, a permanent injunction, damages and attorney's fees. *Id.,* Petition at 6–7. Walsh neither named nor served DHR. The defendants moved to dismiss, and Justice Corning granted defendants' motion in a memorandum decision and order signed March 14, 1995. *Id.,* Memorandum Decision and Order, Dkt. No. 11, Ex. B. at 2–3. Justice Corning held that Walsh was not free to bring a plenary action alleging age discrimination because he had elected his remedies by filing an administrative complaint. *Id.* at 2; *see also* N.Y.Exec.L. § 297(9) (McKinney 1993). Justice Corning also stated that Walsh "has not brought an Article 78 proceeding challenging the determination and cannot do so in this action since the Human Rights Division was not a named respondent

and the proceeding is not timely." *Walsh v. City of Auburn,* Memorandum–Decision and Order at 2; Exec.L. § 298. Therefore, Justice Corning denied Walsh's application for "a judgment determining his termination was in violation of the Age Discrimination in Employment Act or that he should be appointed as Assistant Director of Solid Waste." *Walsh v. City of Auburn,* Memorandum–Decision and Order at 3. Justice Corning also rejected on the merits Walsh's claim that he should have been given a preference under the Civil Service Law and appointed to the assistant solid waste director's position and determined that this claim was untimely.[3] *Id.* at 2–3.

Walsh filed a notice of appeal from Justice Corning's memorandum decision and order on Monday April 17, 1995. At the time of oral argument, Walsh had not perfected this appeal. Walsh explains that his lack of funds and expertise has prevented him from perfecting the appeal. Dkt. No. 35, Memo from Plaintiff to Court of 10/11/95.

Walsh filed this action on May 5, 1995. He sued all of the defendants named in the second state court lawsuit ("the municipal defendants") as well as the general counsel, New York State Division of Human Rights, the general counsel of the United States Equal Employment Opportunity Commission, and the Auburn Civil Service Commission. Walsh and the EEOC stipulated to dismissal of plaintiff's claims against the EEOC, and Walsh conceded at oral argument that the Auburn Civil Service Commission was entitled to dismissal.

---

**2.** Walsh had earlier filed a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules in New York State Supreme Court (Cayuga County). *Walsh v. Malone,* No. 92–3447 (Supreme Court Cayuga County). In this proceeding, Walsh claimed that he was entitled to reinstatement as Recycling Administrator or appointment to the position of assistant director of solid waste pursuant to New York's Civil Service Law. Supreme Court (Hon. Peter E. Corning, A.J.S.C.) granted judgment dismissing the petition on August 4, 1993. *Id.,* Decision.

**3.** Parsing Justice Corning's decision on this issue is difficult because he does not specifically refer to the Civil Service Law. However, the decision

states that Walsh alleged "he should have been given a preference in connection with a newly created position of Assistant Director of Solid Waste," and then goes on to state that Walsh had failed to show that the newly created position had the same qualifications as those of his prior position or that he had the requisite qualifications. *Id.* at 2–3. The concept of preferred lists and preferences is relevant to the New York Civil Service Law and not to the ADEA or the New York Human Rights Law. *See, e.g.,* N.Y.Civ. Serv.L. § 81 (McKinney 1983). Therefore, it appears that after dismissing Walsh's discrimination claims based on election of remedies, Justice Corning dismissed his Civil Service claim on the merits.

## III. The Current Motions

■ DHR[4] moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). DHR claims that (1) this action is barred by sovereign immunity, (2) DHR is not a person within the meaning of 42 U.S.C. § 1983, and (3) DHR is not an employer within the meaning of 29 U.S.C. § 630(b). The municipal defendants seek dismissal of Walsh's age discrimination complaints based on failure to state a claim on which relief can be granted, res judicata and/or collateral estoppel, and qualified immunity. Finally, the municipal defendants seek dismissal of Walsh's First Amendment claims because (1) there is no allegation that Walsh's speech was restricted, (2) the Solid Waste facility was not a public forum and therefore plaintiff had no right to free speech at that location, (3) the defendants' restriction of its employees' speech was reasonable, and plaintiff has no standing to challenge that restriction, and (4) the defendants were protected by qualified immunity. I heard oral argument on October 16, 1995.

## DISCUSSION

### I. The DHR Motion

■ I must dismiss Walsh's complaint as against DHR. First, sovereign immunity bars the First Amendment Claim. As a governmental entity, DHR is an arm of the state and receives the benefit of Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *see also Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir.1991). In addition, DHR is not a person within the meaning of Section 1983. *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 2436–37, 110 L.Ed.2d 332 (1990). Finally, Walsh does not even allege that DHR restricted his right of free speech in any way; therefore he has failed to state a Section 1983 claim against DHR.

■ Similarly, Walsh does not allege that DHR discriminated against him on the basis of his age. Instead, he claims that DHR's

investigation of his age-based discrimination complaint was negligent and inadequate leading to an incorrect result. Walsh Reply Aff. ¶¶ 7, 9. The ADEA governs the conduct of employers toward their employees and/or job applicants as well as the conduct of employment agencies and labor organizations. 29 U.S.C. § 623. It forbids discrimination on the basis of age and retaliation based on ADEA charges or participation in any investigation, proceeding or litigation under the ADEA. 29 U.S.C. § 623(a)–(e). Walsh has not alleged that DHR discriminated against him on the basis of age or that he was an employee of DHR or an applicant for employment with DHR. Therefore, he has not stated an actionable claim for relief under the ADEA. *Cf. Baba v. Warren Management Consultants, Inc.*, 882 F.Supp. 339, 342 (S.D.N.Y.) (Title VII plaintiff has no cause of action against DHR absent allegation of an employment relationship between DHR and plaintiff), *aff'd*, 89 F.3d 826 (2d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 119, 136 L.Ed.2d 70 (1996); *Peavey v. Polytechnic Institute of New York*, 749 F.Supp. 58, 58–59 (E.D.N.Y.1990) (no claim against EEOC for Title VII plaintiff), *aff'd*, 940 F.2d 648 (2d Cir.1991). Insofar as plaintiff alleges negligence against DHR, this court, of course has no subject matter jurisdiction absent diversity of citizenship. Therefore, Walsh's claims against DHR must be dismissed for failure to state a claim upon which relief can be granted and/or lack of subject matter jurisdiction.

### II. The Municipal Defendants' Issue and Claim Preclusion Arguments

■ The municipal defendants contend that all of Walsh's age discrimination complaints are barred by the Constitutions's Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and 28 U.S.C. § 1738. Section 1738 requires a federal court to give the same preclusive effect to a state court judgment as that state's courts would give to it. *Migra v.*

---

4. Walsh named DHR's general counsel not DHR in the caption of the complaint. However, the allegations of the complaint concern DHR and not its general counsel. Because Walsh makes no claims against the DHR General Counsel individually, his claim is an official capacity claim

tantamount to a claim against the Division or the State itself, and I address it as such. *Cf. Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993) (treating official capacity claim against public official in his official capacity as claim against state for immunity purposes).

*Warren City Sch. Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

██ Because the elements of proving discrimination are virtually identical under federal and state anti-discrimination laws, DHR decisions that have been affirmed by a state court preclude litigation of the same claims under the analogous federal statute. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479–480, 484–85, 102 S.Ct. 1883, 1896–1897, 1899–1900, 72 L.Ed.2d 262 (1982) (Title VII case); *Fidelo v. Mobil Oil Corp.*, 1990 WL 165758 at *2–3 (S.D.N.Y.1990) (age discrimination claim). A New York State court decision dismissing an appeal from a DHR decision because the appeal was untimely or because a necessary party has not been joined bars the plaintiff from bringing a federal court action based on the same allegedly discriminatory acts as effectively as an affirmance of the DHR decision on the merits. *Bray v. New York Life Ins.*, 851 F.2d 60, 64 (2d Cir.1988) (state court dismissal of appeal from DHR determination on statute of limitations grounds has preclusive effect in Title VII action); *Kirkland v. City of Peekskill*, 828 F.2d 104, 109 (2nd Cir.1987) (granting res judicata effect in Section 1983 action to state appellate court's dismissal—on timeliness grounds—of an appeal from a lower court's dismissal for failure to timely serve a necessary party). However, administrative determinations concerning discrimination that have not been reviewed by a state court do not have claim or issue preclusion effect in a subsequent ADEA action. *Astoria Federal Sav. and Loan Ass'n. v. Solimino*, 501 U.S. 104, 110, 111 S.Ct. 2166, 2170–71, 115 L.Ed.2d 96 (1991). Moreover, a determination by a New York court that it lacks subject matter jurisdiction to review a claim does not have preclusive effect as to the merits of that claim in another court. *See Whitfield v. JWP/Forest Electric Corp.*, 223 A.D.2d 423, 637 N.Y.S.2d 4, 5 (1st Dept. 1996); *Home of Histadruth Ivrith, Inc. v. State Facilities Development Corp.*, 114 A.D.2d 200, 204, 498 N.Y.S.2d 883 (3d Dept. 1986). A dismissal based on election of remedies pursuant to Section 297(9) of the New York Executive Law is a dismissal for lack of subject matter jurisdiction. *Spoon v. American Agriculturalist, Inc.*, 103 A.D.2d 929, 930, 478 N.Y.S.2d 174 (3d Dept.1984).

██ Because a New York court would accord preclusive effect to a dismissal based on statute of limitations but not to one based on election of remedies, I must determine the basis on which Justice Corning dismissed Walsh's discrimination claims. Justice Corning stated:

> Petitioner was terminated as of June 30, 1992 when his job as Recycling Director of the City of Auburn was abolished. Petitioner filed an action with the Division of Human Rights charging unlawful discriminatory practice based on his age. The State Division of Human Rights made a determination dismissing Mr. Walsh's claim. The filing of a complaint with the Human Relations Committee (sic) under Article 15 of the Executive Law was an election of remedies and accordingly, petitioner is not entitled to access to the Courts of this state for purposes of deciding this issue. Petitioner has not brought an Article 78 proceeding challenging the determination and cannot do so in this action since the Human Rights Division was not a named respondent and the proceeding is not timely.

*Walsh v. City of Auburn*, Memorandum Decision and Order at 2. The thrust of Justice Corning's decision is that Walsh could not file a plenary action alleging discrimination in a New York State Court because he had previously filed an administrative complaint. Justice Corning also noted that Walsh had not brought an Article 78 proceeding to review DHR's no probable cause finding and could not do so in the action before Justice Corning because Walsh had not named DHR as a respondent and had not brought a proceeding in a timely manner. *Id.* The statute of limitations defense that Justice Corning discusses thus applies to a proceeding that Walsh did not bring. With respect to the claim before Justice Corning, the discussion is therefore dictum. Because Justice Corning dismissed Walsh's petition based on election of remedies, the dismissal does not have claim preclusive effect in this lawsuit.

The municipal defendants also contend that Walsh has failed to state a claim under the ADEA. In a reduction-in force case, the employee establishes a *"prima facie* case of unlawful age discrimination by showing (1) [he] belongs to the protected age group; (2) [he] was qualified to assume another position had it been available at the time [he] was discharged; (3) [he] was discharged; (4) and that the discharge occurred under circumstances suggesting that age was a factor." *Gallo v. Prudential Residential Serv. Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). In determining whether Walsh has made out a prima face case, I must construe his complaint liberally on this Rule 12(b)(6) motion. *See Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Walsh alleges that shortly after Malone eliminated Walsh's job as a part of a reduction in force, Malone created several new positions and filled the majority of these positions with younger workers. Compl. ¶ 7-A(A)(1-2), (5). These new workers, according to Walsh, performed portions of his former job. *Id.* ¶ 7-A(A)(2). Moreover, reading Walsh's complaint liberally, I find that he alleges that he is qualified for at least some of the newly created positions. He states that both the solid waste director and the assistant solid waste director do not possess the minimum qualifications for their jobs and invites comparison to his own qualifications. *Id.* ¶ 7-A(A)(2), (6). At this juncture, I can dismiss only if Walsh can prove no set of facts in support of his claim that would entitle him to relief. *Conley,* 355 U.S. at 45-46, 78 S.Ct. at 101-102 (1957). While a properly supported motion for summary judgment might demonstrate that Walsh lacks the qualifications for the jobs that were created after his termination, defendants have not yet made a factual submission with respect to Walsh's lack of qualifications.

Walsh has, however, failed to state an ADEA claim on which relief can be granted against defendants Cosentino, Bunker, Hutchinson, Malone, LaLonde, Becker, and Fandrich in their individual capacities. In a recent case, the Second Circuit determined that Title VII applied only to employer entities and not to individual defendants acting as agents of the employer. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995). Since *Tomka,* several district courts in this circuit have considered whether the ADEA permits individual liability. *See Wray v. Edward Blank Assoc.,* 924 F.Supp. 498, 502-504 (S.D.N.Y.1996); *Jungels v. State Univ. College of New York,* 922 F.Supp. 779, 782-783 (W.D.N.Y.1996); *Storr v. Anderson Sch.,* 919 F.Supp. 144, 146-148 (S.D.N.Y.1996); *Gregor v. Derwinski,* 911 F.Supp. 643, 654-655 (W.D.N.Y.1996). Each has concluded that the ADEA does not permit individual liability. *Wray,* 924 F.Supp. at 504; *Jungels,* 922 F.Supp. at 783; *Storr,* 919 F.Supp. at 148; *Gregor,* 911 F.Supp. at 654. The ADEA's definition of employer contains language similar to that contained in Title VII. *Compare* 42 U.S.C. § 2000e(b) *with* 29 U.S.C. § 630(b). Therefore, I agree with the courts that have addressed this issue since *Tomka* [5] that there is no basis for finding agents of the employer individually liable under Title VII.

In addition, I will dismiss the ADEA claims against the municipal defendants in their official capacities because these claims are redundant. *See Rosa R. v. Connelly,* 889 F.2d 435, 437 (2d Cir.1989), *cert. denied,* 496 U.S. 941, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990). The real party in interest with respect to Walsh's ADEA claims is the City of Auburn.

Because I have dismissed Walsh's ADEA claims against all defendants except the City of Auburn, I need not address the municipal defendants' qualified immunity argument.

### III. The First Amendment Claim

Becker, the director of the Solid Waste Facility, wrote a memorandum which forbade solid waste facility employees from talking

---

5. Prior to *Tomka,* I held based on precedent in this district that individuals could be liable under the ADEA if they participated in the discrimination and exercised sufficient control over the plaintiff's employment. *Austin v. Cornell Univ.,* 891 F.Supp. 740, 750 (N.D.N.Y.1995) (citing *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 134 (N.D.N.Y.1990) (McCurn, C.J.); *Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y. 1985), *aff'd,* 907 F.2d 144 (2d Cir.1990)). After *Tomka, Austin, Wanamaker,* and *Bostick* are no longer authoritative.

with Walsh while he was on-site and implied that employees should not talk with Walsh about departmental business while off-site. Becker copied the memorandum to defendants LaLonde and Malone, and Walsh alleges that LaLonde advised Becker to write the memorandum. Walsh makes no allegation that any other defendant deprived him of free speech. The municipal defendants argue that the First Amendment claims should be dismissed because (1) Walsh has not alleged his own right to free speech has been restricted; (2) the landfill is not a public forum; (3) the municipality has a right to regulate its employees' speech; and (4) the defendants enjoy qualified immunity. I consider each of these arguments in turn.

The municipal defendants first urge that I should dismiss Walsh's First Amendment claims because he has not claimed any deprivation of his own right to free speech but rather has claimed only that certain employees were forbidden to speak to him. This objection lacks merit because the recipient of speech has standing to protest a gag order under certain circumstances. *See Virginia Pharmacy Bd. v. Virginia Consumer Council, Inc.,* 425 U.S. 748, 756, 96 S.Ct. 1817, 1822–23, 48 L.Ed.2d 346 (1976) (consumers of prescription drugs can attack on First Amendment grounds a statute that forbids pharmacists from advertising drug prices); *Procunier v. Martinez,* 416 U.S. 396, 408–409, 94 S.Ct. 1800, 1808–1809, 40 L.Ed.2d 224 (1974) (proposed recipient of correspondence with a prisoner has a first amendment right to receipt of that correspondence), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989); *Dow Jones & Co. v. Simon,* 842 F.2d 603 (2d Cir.) *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988) (news agencies have standing to challenge gag order). Although a listener's first amendment right presupposes a willing speaker, *Virginia Consumer Council,* 425 U.S. at 756, 96 S.Ct. at 1822–23, it is not clear at this juncture that the facility employees were unwilling to give Walsh information.

The municipal defendants next urge that they were free to limit speech at the landfill because the landfill is not a public forum. When the government seeks to limit speech on property that has traditionally been available for public expression or that has been designated as a public forum, it must show that its limitation is narrowly drawn to achieve a compelling state interest. *International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992). However, the state may regulate speech on all other property it owns as long as the challenged regulation is reasonable and "not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Id.* at 678–679, 112 S.Ct. at 2705–2706. Because this is a rule 12(b)(6) motion, the defendants have not submitted any proof in support of their assertion that the landfill is not a public forum. Moreover, the challenged policy can be read as limiting the speech of landfill employees—and therefore Walsh's right to receive speech—even off site. The memorandum states: "It would be in our best interest not to discuss the Department's business with him off site, either." Compl.Ex. 19.

Because Becker's memo can be read to limit off-site speech, defendants' characterization of the memo as limiting speech only on the job site cannot be accepted at this very early stage of this action.

The municipal defendants' third argument is that they had the right to regulate their employees' speech pursuant to the balancing test set forth in *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). *Pickering* and its progeny recognize that a public employer as employer has an interest in insuring the efficient function of its operations that may conflict with the interest of the employee as citizen to comment on matters of public concern. *Id.; Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987). Because of this conflict between important interests, the Supreme Court has established a framework for evaluating complaints by public employees of infringement of their right to free speech. *Rankin,* 483 U.S. at 384–389, 107 S.Ct. at 2896–2900. First, the court must determine

whether the employee has spoken on a matter of public concern. *Id.* at 384, 107 S.Ct. at 2896–97. Speech touching on purely personal matters is not wholly exempt from First Amendment scrutiny; however, where the speech is not of public concern, it is not ordinarily appropriate for the courts to examine a personnel decision made on account of that speech. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The court must examine the entire record for the content, form and context of a given statement to determine whether it touches on a matter of public concern. *Id.* at 147–148, 103 S.Ct. at 1690–1691. If speech is of public concern, the court must next balance the employee's interest in making the statement against the state's interest in promoting the efficiency of the work its employees perform for the public. *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899 (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35).

Some of the forbidden topics addressed in the memo—e.g. the departmental operations and personnel deployment—arguably touch on matters of public concern. Defendants have submitted no proof to support their claim that Auburn's interests as an employer outweigh Walsh's interests in receiving speech from public employees. Instead, this motion seeks dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted so the governing standard is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (quotation omitted).

The memo indicates that it was written by Becker at the suggestion of LaLonde. At this juncture, Walsh's allegation that Becker—at the instruction of LaLonde—wrote a memo precluding city employees from talking to Walsh at a work site open to the public and arguably also when they were not at work about matters that might be of concern to the public suffices to allege a First Amendment violation against these two defendants. Moreover, the memo was copied to Malone who thus may be liable as a person who "allowed such a[n unconstitutional] policy … to continue." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

However, I must dismiss the First Amendment claims against the remaining individuals who bear no personal responsibility for the memo. Walsh makes no allegation that defendants Cosentino, Bunker, Hutchinson or Fandrich limited his First Amendment rights in any way.

■■■■■■ In addition, Walsh cannot succeed against the City of Auburn on a *respondeat superior* theory. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). However, the city may be liable if any of the officials that participated in disseminating the memo can be considered a policy maker. *See Pembaur v. Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). State law determines which officials have the ability to make policy. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988) (plurality). The court determines whether a particular official is a policy making official prior to trial by reviewing "relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Jett v. Dallas Independent Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989) (internal citations and quotations omitted). Neither party has briefed the policy maker issue. I therefore leave its resolution for another day. *See, e.g., Frank v. Relin,* 1 F.3d 1317, 1325 (2d Cir.) (reversing dismissal of official capacity claim because district court failed to consider whether district attorney was a policy maker), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). Auburn may, of course, make a properly supported motion for summary judgment to establish that Becker, Malone, and LaLonde were not policy makers.

■■■■■■ Finally, I consider the individual defendants' qualified immunity defense with respect to Walsh's First Amendment claim. This defense applies only to the claims for damages against the individual defendants and does not ordinarily bar injunctive relief. *See Wood v. Strickland,* 420 U.S. 308, 314–15 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214

(1975). Walsh has requested "equitable relief" and asserts that the August 1993 memo remains the official policy of the City. Compl. ¶¶ 4–5; Walsh Reply Aff. ¶ 8. Qualified immunity will not bar this request for injunctive relief. *Wood,* 420 U.S. at 314–15, n. 6, 95 S.Ct. at 997, n. 6. Moreover, qualified immunity does not bar Walsh's damages claims against the municipality itself. *Owen v. City of Independence, Mo.,* 445 U.S. 622, 657, 100 S.Ct. 1398, 1418–19, 63 L.Ed.2d 673 (1980). Nor does qualified immunity protect a municipal employee sued in his official capacity from a claim for damages. *Ying Jing Gan,* 996 F.2d at 529 (2d Cir.1993).

■ A defendant sued as an individual is entitled to qualified immunity from damages if he is performing a discretionary function and his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Prue v. City of Syracuse,* 26 F.3d 14, 17 (2d Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). The defendant must show either that his conduct did not violate clearly established rights or that it was objectively reasonable to believe that his actions did not violate clearly established rights. *Soares v. State of Conn.,* 8 F.3d 917, 920 (2d Cir.1993).

■ In determining whether the right was clearly established at the time a defendant acted, I must consider: "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Kaluczky v. City of White Plains,* 57 F.3d 202, 207 (2d Cir.1995) (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir. 1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

Walsh's claim in this action is that he had a right to receive information from public employees both on and off the work site. The defendants argue that their policy was a reasonable response to a litigious ex-employee.[6] In addition, the August 23rd memo specifically permitted Walsh to seek information from certain city spokesmen.

■ It has long been clearly established that public employees have a right, albeit not an unqualified one, to speak on matters of public concern. *Frank,* 1 F.3d at 1328. The right of a recipient to receive speech without interference from the government has also long been clearly established. *See Virginia Consumer Council,* 425 U.S. at 756, 96 S.Ct. at 1822. It is also clear, however, that the government has discretion to limit the speech of its employees even on matters of public concern in certain instances. *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899. Moreover, the right Walsh claims—*i.e.* the right to receive speech from certain public employees after filing claims against the city—has not been defined with specificity by this circuit or the Supreme Court. Plaintiff cited no case on this issue, and I found none. Thus under preexisting law, a reasonable public official would not have known the action of barring subordinates from talking with Walsh concerning the topics addressed in the memo was contrary to the Constitution. The individual defendants are therefore entitled to dismissal based on qualified immunity.

## CONCLUSION

For the reasons discussed, the complaint in this action is dismissed against the General Counsel, New York State Division of Human Rights; the Auburn Civil Service Commission; Mayor Guy Cosentino; and Councillors Ann Bunker, James Hutchinson, and Mark Fandrich. All claims made pursuant to the ADEA are dismissed against all defendants except the City of Auburn. Walsh's First Amendment claims are also dismissed against all defendants except the

6. Walsh argues that he had no litigation pending at the time Becker issued his memo. However, he concedes he had previously brought a civil

service proceeding against some of the defendants and had a discrimination claim pending. Walsh Reply Aff. ¶ 22–23; Compl.Exs. 16–18.

City of Auburn and LaLonde, Becker and Malone in their official capacities.

IT IS SO ORDERED.