**Peggy A. BOTTGE, Plaintiff,**

v.

**SUBURBAN PROPANE; Mark Alexander, as President and CEO of Suburban Propane; and David R. Macdaid, as Area Vice President of Suburban Propane, Defendants.**

No. 98–CV–1865.

United States District Court, N.D. New York.

Dec. 15, 1999.

William F. Sheehan, Hinman, Straub Law Firm, Albany, NY, for Plaintiff.

Robin S. Weinberg, Kelley, Drye Law Firm, New York City, for Defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Plaintiff contends that she was denied severance pay in retaliation for alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the New York State Executive Law ("Executive Law"). Defen-

dants now move to partially dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, that motion is granted.

## I. BACKGROUND

As of March 1998, defendant Suburban Propane had employed Plaintiff for nearly twenty years and attained the position of regional manager for the sales area encompassing eastern New York and parts of Massachusetts and Connecticut. Once Plaintiff reached the twentieth year of employment with defendant Suburban, she would have been entitled to a substantial increase in defendant Suburban's contributions to her retirement benefits. On March 18, 1998, one month prior to that twenty year mark, defendant Suburban fired her. Defendant David R. Macdaid, Plaintiff's supervisor, reportedly advised her that her performance was excellent and the termination unrelated to her employment. According to Plaintiff, she was told that her discharge was "strictly a matter of geography." Upon Plaintiff's refusal to sign a waiver of all discrimination claims, her severance pay was withheld.

Defendant Mark Alexander is President and CEO of defendant Suburban, and, Plaintiff alleges, has orchestrated a systematic purge of managerial personnel over 40 who were approaching the twenty year mark of service.

## II. ANALYSIS

### A. Title VII Retaliation

■ Plaintiff contends that her refusal to sign a waiver of all discrimination claims, which Defendants demanded as a condition of her receipt of severance pay, was a protected activity and Defendants' refusal to pay constitutes retaliation within the meaning of Title VII. Defendants maintain that refusal to sign a waiver cannot be construed as protected activity, and Plaintiff has therefore failed to allege a Title VII retaliation claim. Defendants argue that the only protected activity that Plaintiff engaged in was the filing of a discrimination charge with the EEOC three months after termination and subsequent to Defendants' refusal to pay her severance, which would mean that the retaliation preceded the protected activity—a logical impossibility even within the confines of Title VII: prospective retaliation does not exist.

■ The Court's must determine whether Plaintiff has established a prima facie case of retaliation and, more specifically, whether refusal to sign the waiver represents a protected activity. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff's burden at this stage is slight—she may establish a prima facie case with de minimis evidence. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). A prima facie case of retaliation under Title VII and the ADEA requires proof that: (1) the plaintiff was engaged in an activity protected under the ADEA; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995) (retaliation claim under Title VII).

With respect to the first element, participation in protected activity, Plaintiff need not establish at this stage that the conduct she opposed was actually a violation of Title VII, but only that she possessed a "good faith, reasonable belief that the underlying employment practice was unlawful" under that statute. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996). The reasonableness of Plaintiff's belief is to be assessed in light of the totality of the circumstances. *See id.* As to the second element, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could rea-

sonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.

 Refusal to sign a waiver of rights can only constitute protected activity if that refusal represents an intent to complain about discriminatory employment practices. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e–3(a). In short, there must be some indicia in declining to sign a waiver suggesting that the employee has made a complaint. Protected activity involves some form of objection, however informal. Declining to sign a waiver of rights does not represent such an objection to discrimination, and therefore is not protected activity within the meaning of Title VII. Moreover, Plaintiff fails to allege at the time of termination that she in any way disclosed to her supervisors that her refusal represented such an objection. The retaliation claim consequently founders on the second prong for establishing a prima facie case of retaliation since her employers were not on notice that her refusal to sign the waiver was related to a complaint of discrimination.

**B. Defendants Alexander and Macdaid**

It is well-established that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka*, 66 F.3d at 1313. Nevertheless, Plaintiff contends that she is entitled to bring Title VII claims against defendants Alexander and Macdaid in their official capacities even if they will not be financially liable under the statute. While the Second Circuit has reserved on this issue, see *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 n. 2 (2d Cir.1995), courts in the Northern District which have reviewed this issue have rejected individual liability, see, e.g., *Walsh v. City of Auburn*, 942 F.Supp. 788

(N.D.N.Y.1996). Indeed, the weight of authority in this Circuit is against such liability. *See McBride v. Routh*, 51 F.Supp.2d 153, 156–57 (D.Conn.1999) (collecting cases). The official/personal capacity distinction seems misplaced since it would place this Court in the position of holding someone liable without providing Plaintiff with a remedy at law. The Court therefore holds that *Tomka*'s individual liability bar applies to individual defendants in their official capacities, as well as to situations where the plaintiff seeks prospective injunctive relief against such individuals, under both Title VII and the ADEA.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants' motion to partially dismiss is GRANTED, and the Title VII retaliation claim against all Defendants as well as the Title VII claims against defendants Alexander and Macdaid in their official capacities DISMISSED; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.